## FISCHER *v*. HAYES.

*(Circuit Court, S. D. New York.   January 26, 1881.)*

1. CONTEMPT—FINE—JUDGMENT.

     A contempt of court is a specific criminal offence, and the imposition of a fine for such contempt is a judgment in a criminal case.

2. SAME—JUDGMENT—EXPIRATION OF TERM.

     The court has no power to vary such judgment after the expiration of the term at which the fine was imposed.

3. SAME—ORDER OF COURT—RECITAL.

     The order adjudging the contempt need not recite the offence, where the latter is set forth with sufficient particularity in the affidavits and reports filed in the proceedings, and the order is connected therewith by sufficient reference.

4. SAME—SAME—SAME.

     An order adjudging contempt for the violation of an injunction need not recite that such injunction was lawful.

5. SAME—ORDER MADE IN ORIGINAL SUIT.

     In proceedings in equity between parties to the suit, for contempt in not obeying an order in the cause, the fine for such contempt can be imposed by an order made in the original suit.

6. SAME—POWER OF COURT TO MAKE SUBSEQUENT ORDER.

An order adjudging the contempt, and setting on foot a proceeding for the purpose of ascertaining what amount of pecuniary fine should be imposed therefor, and directing on what principle and by what means it should be fixed, does not exhaust the power of the court to make a subsequent order fixing the amount of the fine, and directing commitment until the same should be paid.

7. SAME—ORDER TO STAND COMMITTED.

Where a statute authorizes or prescribes the infliction of a fine, as a punishment for a contempt of court, it is lawful for the court inflicting the fine to direct that the party stand committed until the fine is paid, although there be no specific affirmative grant of power in the statute to make such direction.—[ED.

In Equity. Proceedings for Contempt.

*Charles F. Blake*, for plaintiff.

*James H. Whitelegge*, for defendant.

BLATCHFORD, C. J. This suit is brought for the infringement of letters patent No. 74,068, granted to the plaintiff February 4, 1868, for an "improvement in machine for forming sheet-metal mouldings." The patent was before this court in *Fischer* v. *Wilson*, 16 Blatchf. 220, and was sustained in April, 1879. This suit was brought in May, 1879. On a motion made on due notice to the defendant, this court, on the fourteenth of June, 1879, issued a preliminary injunction, restraining the defendant from making, using, or selling any machine embodying the inventions described and claimed in the second and fourth claims of the patent. This injunction was served on the defendant on the same day. Afterwards a motion founded on affidavits sworn to July 18, 1879, was made before the court for an attachment against the defendant for contempt for violating said injunction. The affidavits were those of Erickson, Conolly, and Abbott, and went to show a violation of the injunction by the defendant after its service on him in the use, in making sky-light bars, of improvements covered by the second and fourth claims of the patent. The sky-light bars were made of sheet metal, and were formed and bent on a machine. The affidavits set forth the particulars of the alleged contempt charged, and were filed in court, and copies of them were served on the defend-

ant on the twenty-eighth of July, 1879. The defendant opposed the motion on affidavits, and the court made an order on the first of August, 1879, requiring the defendant to permit an inspection on the part of the plaintiff of his machinery for bending sheet metal, and of the method of bending such sheet metal used by him. The order said: "It being the object and intention of this court to enable the complainant herein to present such evidence to the court herein as will enable the complainant to make out, if the fact be so, the infringement of the patent here in suit, and a contempt of the injunction heretofore issued and served herein;" and referred it to Mr. Shields to ascertain the fact of said infringement, "if the same be so," and report his finding to the court, and ordered "that the complainant may examine before the said referee, George Hayes and all his employes and assistants, and that both parties may examine such other witnesses as they may elect to examine." The reference before Mr. Shields commenced on the twenty-ninth of August, 1879. Witnesses for both parties were examined before the referee. The defendant was examined on the part of the plaintiff, and took no objection to the propriety or lawfulness of his being examined. He was also examined as a witness on his own behalf. The report of Mr. Shields was filed January 8, 1880. This court had, on the thirtieth of June, 1879, on motion and due notice, made an order adjudging the defendant guilty of contempt by using a machine for bending sheet metal in violation of said injunction. The proceedings covered by the motion which resulted in the order of August 1, 1879, related to a violation after June 30, 1879, and the testimony before Mr. Shields and his report related to such a violation. Mr. Shields, in his report, found that the defendant had, since the order of June 30, 1879, infringed the fourth claim of the patent, and stated in detail wherein such infringement consisted. The defendant filed exceptions to the findings in the report. On all the proceedings in the case, and the testimony taken before Mr. Shields and his report, the plaintiff moved before this court, on due notice, "for an order for attachment for contempt and punishment herein, notice of

motion for which has been heretofore served on you, and which motion has been partially heard, and was referred to John A. Shields, Esq., referee, on the first day of August, 1879." On the hearing thereon the court, on the seventh of February, 1880, made an order as follows, entitled in this cause: "A motion for attachment for contempt having come on to be heard herein, and the matter having been referred to John A. Shields, Esq., to take the testimony of and to hear the parties, and to report to the court on the question of infringement, and the said referee having reported that the defendant has used the invention described in the letters patent on which this suit is brought in violation of the injunction of the court herein since about the second day of July, 1879, and the said referee's report having been presented to this court for confirmation, and Mr. Blake having been heard for complainant, and Mr. Whitelegge for defendant, now, therefore, it is hereby ordered, adjudged, and decreed that the said report be and it hereby is confirmed. * * * And it is further ordered, that the further hearing of this motion on the question of punishment and terms go over until Friday, February 13, 1880, at the opening of court on that day." On the seventeenth of February, 1880, this court made an order as follows, entitled in this cause: "A motion for attachment for contempt herein having come on for further hearing on the question of punishment or terms on this thirteenth day of February, 1880, and Charles F. Blake, Esq., having been heard for the motion, and J. H. Whitelegge, Esq., opposed, now, therefore, it is hereby ordered and decreed, that the defendant is adjudged to have committed the contempt alleged, and that he pay, as a fine therefor, the amount of all costs, charges, and disbursements whatsoever suffered, borne, or incurred by the complainant by reason of, or on account of, the said motion, and that the question of the amount of said fine be submitted to this court on affidavits, and without argument, as follows: The complainant to serve his affidavits on the solicitor for the defendant on or before Friday, February 20, 1880; that defendant serve his replying affidavits on counsel for complainant on or

before Tuesday, February 24, 1880, and that complainant have the right to reply; and that all affidavits be filed on or before Friday, February 27, 1880." The plaintiff presented to the court two affidavits on his part, copies of which had been served on the defendant's solicitor on the twentieth of February, 1880. The defendant replied to those affidavits by an affidavit of his own, a copy of which he served on the plaintiff's solicitor on the twenty-seventh of February, 1880. Thereupon this court, on the thirteenth of March, 1880, made an order, entitled in this cause, "on motion for second attachment for contempt," and reading as follows: "This motion, having been heard on the first day of August, 1879, on affidavits and argument by counsel for the respective parties, and thereupon an order having been duly made that it be referred to John A. Shields to ascertain the fact of said infringement, if the same be so, and report his finding to this court, and upon the coming in of the report of said referee, and hearing counsel for the respective parties in support thereof and in opposition thereto, said report was confirmed; and it was then further ordered that the complainant file with the court, and serve copies on defendant, affidavits showing the expenses incurred in the prosecution of this second attachment for contempt; that defendant file and serve answering affidavits, and that complainant may reply thereto; and an amended order, and the affidavit of George Hayes, the defendant, executed on the twenty-sixth day of February, 1880, having been filed in reply to said complainant's affidavits, it is, upon consideration thereof, ordered that the defendant pay into court the sum of $522.49, as set forth in the affidavit of Baron Higham, executed herein on the sixteenth day of February, 1880, and the further sum of $867.50, as set forth in the affidavit of Valentine Fischer, executed herein on the twentieth day of February, 1880, amounting altogether to the sum of $1,389.99, as a fine for said second contempt, within 30 days from the date of the entry of this order, to-wit, the twelfth day of April, 1880, and that, if not paid, the defendant stand committed till it be paid, and that, when paid, it be paid over to the plaintiff in re-imburse-

ment." On the eleventh of May, 1880, the defendant sued out a writ of error from the supreme court of the United States to reverse the said judgment convicting him of a contempt. The plaintiff moved in that court to dismiss said writ of error, and the supreme court dismissed it for want of jurisdiction on the twenty-ninth of November, 1880. The plaintiff now, on presenting to this court the mandate of the supreme court dismissing said writ, moves for an order that the said order of March 13, 1880, be carried into effect; and the defendant at the same time moves that the said order of February 17, 1880, and the said order of March 13, 1880, be declared inoperative and void, and of no effect, or that the plaintiff be perpetually restrained and enjoined from any further action or proceeding respecting the same.

It is provided by section 725 of the Revised Statutes that the courts of the United States shall have power to punish, "by fine or imprisonment, at the discretion of the court, contempts of their authority: *provided*, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts."

It is contended for the defendant that to render effectual a judgment or order convicting a party of contempt, founded on his disobedience to an order of the court, three things must concur: (1) The order must be founded upon some legal or equitable right vested in the party at whose instance it is issued; (2) the order must be lawful and duly authorized at the time it issues; (3) the disobedience to it must be wilful.

It is well settled that contempt of court is a specific criminal offence, and that the imposition of a fine for a contempt is a judgment in a criminal case. *New Orleans* v. *Steamship Co.* 20 Wall. 387, 392. Although there has as yet been

neither an interlocutory nor a final decree on the merits in this suit, yet the order imposing the fine for the contempt was a final order or judgment as to the matter of the contempt. The last order as to that matter was made prior to the April term, 1880. Since it was made the April term, 1880, has begun and ended, and we are now in the October term, 1880. The defendant's motion has not been made till in the present term. The general power of the court over its own judgments, orders, and decrees in civil and criminal cases, during the existence of the term at which they are first made, is held to be undeniable, (*Ex parte Lange*, 18 Wall. 163, 167;) and it is further held that the power to vary a final judgment or order, at least in a case where there was jurisdiction to make it, does not exist after the term at which it was made. *Bank of United States* v. *Moss*, 6 How. 31; *The Bank* v. *Labitut*, 1 Woods, 11. In *U. S.* v. *Moss* it was held to be too late after final judgment and at the next term, and by motion only, to set aside a judgment on account of a supposed want of jurisdiction; and the authorities cited in that case show it to be well settled that no error of law or fact, if any, not involving jurisdiction, committed by this court in making the order now sought to be vacated, can be rectified by this court on this motion. It does not appear that any error was committed; but, for the foregoing reason, it is not necessary to discuss that question. The utmost that the defendant could claim would be to have this court consider the question of jurisdiction now, as if he were in custody for the non-payment of the fine, and were before this court on a writ of *habeas corpus*.

The foregoing views cover all the suggestions made in argument, that the defendant, in the infringement on which the order in question was based, was guided by what he understood to be the views expressed by the court in its decision in *Fischer* v. *Wilson*, 16 Blatchf. 220; that his infringement was, therefore, not wilful, though mistaken; that the infringement was committed by the making of sky-light bars; that the patent of the plaintiff was and is invalid, and therefore the injunction that was disobeyed was not a lawful order,

and that the amount arrived at as a fine was not proved in a proper way.

Some points are made, on the part of the defendant, which are taken by him as arising on the face of the proceedings:

(1) It is objected that the order of February 17, 1880, decrees only "that the defendant is adjudged to have committed the contempt alleged," without reciting further the offence of which he is guilty. It is insisted that this was necessary, and, further, that the order should have recited that the defendant had disobeyed a *lawful* order of the court, and was guilty of a contempt of court in so doing. The contempt alleged is set forth with sufficient particularity in the affidavits on which the motion for attachment was founded, and in the report of the referee. All the proceedings and the various orders are sufficiently connected together by reference and recital to identify "the contempt alleged," without the necessity of reciting at length in the orders the particulars of the previous proceedings. The original motion was noticed as a motion for an attachment for contempt for a violation of the injunction, and the proceedings went on to ascertain that fact. The order of August 1, 1879, on its face, referred to the matter of a contempt of the injunction, and that is the "contempt" referred to in the orders of February 7th and 17th, and "the contempt alleged" spoken of in the latter order. It was not necessary to recite that the injunction was a lawful injunction.

(2) It is urged that the fine for contempt could not be imposed by an order made in the suit, but that the order should have been made in a proceeding in the title of which the United States were made a party to the proceeding. It is said, in *The People* v. *Craft*, 7 Paige, 325, that in proceedings in equity between parties to the suit for contempt in not obeying the process of the court, or any order or decree in the cause, the proceedings on the attachment may be, and usually are, entitled as in the original suit, though it is not irregular to entitle them in the name of *The People* on the relation of the person prosecuting the attachment against the defendant or party proceeded against. Where the attachment proceed-

ing for a contempt is against a witness, or a person not a party to the suit, the practice is to entitle the order for attachment, and all subsequent proceedings thereon in the name of *The People* on the relation, etc. *Stafford* v. *Brown*, 4 Paige, 360.

(3) It is contended that, as the order of February 17th, adjudging the contempt, ordered that the defendant pay, as a fine, the amount of all costs, etc., and did not order that the defendant stand committed, etc., the order of March 13th was void, because it ordered the defendant to stand committed, etc. It is also claimed that the court exhausted its power in making the order of February 17th, and that, even if it did not, it had no power to order the defendant to be committed until the fine should be paid. The order of February 17th adjudged the guilt, and ordered that the defendant should pay, as a fine, what should, on an investigation ordered, be ascertained to be the amount of certain expenses. The order did not specify any amount as a fine. The subsequent order specified the amount ascertained on the investigation, and ordered that it be paid by the defendant as a fine for the contempt within 30 days from the order, and that if not paid the defendant stand committed till it be paid, and that when paid it be paid over to the plaintiff in re-imbursement.

It is suggested that section 725 provides for the punishment of a contempt by fine *or* imprisonment, and that, therefore, a commitment for non-payment of the fine is unlawful, because such commitment is imprisonment. There is, however, no commitment or imprisonment if the fine be paid. There is not commitment *and* fine. The punishment by a fine is fully inflicted, under the terms of the order, if the fine be paid as the order directs, and in such case there can be no commitment. So, if there be a commitment for non-payment of the fine, there must be a discharge as soon as the fine is paid. The payment of the fine is the punishment. The awarding or infliction of the fine is no punishment. The commitment is an incident of the fine. It is not, in any manner, the "imprisonment" allowed by the statute. The payment of the fine, and a commitment for not paying it, cannot co-exist. The commitment is not a separate punishment or

imprisonment added to the payment of a fine. It is in this view that it has always been held that where a statute authorizes or prescribes the infliction of a fine, as a punishment either for a contempt of court or for a defined offence, it is lawful for the court inflicting the fine to direct that the party stand committed until the fine be paid, although there be no specific affirmative grant of power in the statute to make such direction.

In *United States* v. *Hudson*, 7 Cranch, 32, 34, it is said that the implied powers of fining for contempt and imprisoning for contumacy are powers which cannot be dispensed with in a court, because they are necessary to the exercise of all others; that they result from the nature of courts of justice; and that, so far, our courts possess powers not immediately derived from statute. *Ex parte Robinson*, 19 Wall. 505, 510. It might properly be held that the order to commit the defendant for non-payment of the fine was a punishment ordered for contumacy or contempt in not obeying the order to pay the fine, and so a punishment for a second contempt, and not a punishment for the contempt of violating the injunction. But the order to commit was lawful on broader grounds.

In *Kane* v. *The People*, 8 Wend. 203, 215, it is said that where a defendant is convicted of a misdemeanor he may be committed to prison until the fine imposed on him for the offence is paid.

In *Ex parte Watkins*, 7 Peters, 568, 575, the existence of the same practice at the common law is recognized.

In *Son* v. *The People*, 12 Wend. 344, on a conviction for a misdemeanor a fine was imposed, with an order that the defendant stand committed until the same be paid. The court might have imposed a fine or imprisonment not exceeding six months, or both. On *certiorari* the supreme court held that the proceeding was regular; that the imprisonment awarded was no part of the punishment, but only a mode of enforcing payment of the fine; and that, if the fine was paid on the defendant's being arrested, the sentence gave no authority to imprison.

In *Harris* v. *The Commonwealth*, 23 Pick. 280, it is held that where, for an offence, the punishment is a fine without imprisonment, the settled rule of law is that the sentence is to pay the fine, or stand committed until that sentence be performed.

In *Wilde* v. *The Commonweallh*, 2 Met. 408, 411, it is said that where the statute authorizes a punishment by fine, costs may be awarded as incident, and the party convicted may be committed till such fine and costs be paid.

In *Regina* v. *Dunn*, 12 Ad. & Ell. (N. S.) 1026, the defendant was indicted for an offence, and convicted, and sentenced to be imprisoned for 18 months, and to give security to keep the peace for two years after the expiration of the 18 months, and to stand committed till he should give such security. The exchequer chamber, on a writ of error, held that the sentence was proper.

In the case of *Drayton and Sears*, 5 Opinions of Attorneys General, 579, cited in *In re Mullee*, 7 Blatchf. 23, they were convicted on an indictment under a statute which imposed only a pecuniary fine for the offence. A fine, with costs, was inflicted, and the court ordered them to be imprisoned till the fine and costs should be paid. They were imprisoned for four years, and then applied to the president for a pardon, and the attorney general, Mr. Crittenden, was of opinion that the president had the power, by pardon, to discharge them from prison and to remit the fine, although, by the statute, one-half of the fine was to go to a private person and the other half to a county.

In *United States* v. *Robbins*, 15 Int. Rev. Rec. 155, the defendant was convicted on an indictment, and sentenced to be imprisoned for a year, and to pay a fine and costs, and to stand committed until the fine and costs should be paid. After the expiration of the year's imprisonment, the fine and costs not being paid, and the defendant being still in jail, he was brought up on *habeas corpus*, and claimed that the part of the sentence which ordered him to stand committed until the fine and costs should be paid was void. The statute authorized both a fine and imprisonment. The court held that,

where a statute imposes a fine, the power to commit a person convicted of the statutory offence to jail until the fine is paid is an inherent power in the court.

In *United States* v. *Kellerman*, 23 Int. Rev. Rec. 202, the defendant was convicted on an indictment, and sentenced to pay a fine and the costs of the prosecution, and to stand committed until said fine and costs be paid, and to be imprisoned for one month. After the defendant had suffered the imprisonment for one month he sued out a writ of *habeas corpus*. The statute authorized the imposition of a fine and costs, and of imprisonment for a specified time, but said nothing about commitment until the fine and costs should be paid. The court held that the judgment for commitment was proper, and that, as the fine and costs had not been paid, the defendant was rightfully in custody.

The foregoing cases were not cases of contempt of court, but, as a fine for a contempt of court is a judgment in a criminal case, the same rule applies.

In *In re Mullee*, 7 Blatchf. 23, the party was fined for contempt in violating an injunction restraining the infringement of a patent, and was ordered to stand committed until the fine should be paid.

In *In re Allen*, 13 Blatchf. 271, the party had disobeyed an order of court requiring him to produce and surrender certain books and papers. He was adjudged guilty of contempt, and was ordered to deliver them up and to pay the costs, and, upon refusal, to be committed to custody by the marshal until discharged by order of the court. On *habeas corpus* it was urged that the imprisonment was illegal because it was to continue during the pleasure of the court. The court say: "When the contempt consist of a violation of the order of the court, and is a contempt not committed in its presence, and the statute does not prescribe the form of the order of commitment, the defendant may be imprisoned until he be discharged by order of the court, or until further order of court. *Green* v. *Elgie*, 8 Jurist, part 1, p. 187, per *Denman*, C. J.; opinion of Chief Justice Kent in *In re Yates*, 4 John. 317; S. C. 9 John. 395. Chief Justice Kent, in *In re Yates*,

says that as it is the established course in matters of contempt to receive the submission of the party whenever he is ready to offer it, and, on reasonable satisfaction made, to discharge him, an order to commit him during the pleasure of the court is favorable to him, for if a definite time is fixed in the sentence the court cannot alter it even on his submission. This was said in a case where the sole punishment inflicted for a contempt of court was imprisonment until the further order of the court. The principle applies *a fortiori* to the present case, where submission may be made by paying the fine, and where the commitment must terminate when the fine is paid.

In *Green* v. *Elgie,* above cited, also reported in 5 Ad. & Ell. (N. S.) 99, the court of review in bankruptcy ordered one Green, a party before it, to pay certain costs within four days, or, in default, to stand committed to prison. He was committed. Afterwards he sued in the queen's bench, for false imprisonment, the person on whose application he was committed and his attorney. There was a verdict against the latter. One ground urged for sustaining the verdict was that the warrant of commitment was void because it did not direct how long the party should remain in prison. The court held that in that respect there was no objection to the warrant; but it was held bad because the order on which it was founded did not adjudge a contempt, or direct anything to be done by the party to clear himself from it.

In *Doubleday* v. *Sherman,* 8 Blatchf. 45, a fine was imposed for contempt in the violation of an injunction, and the defendant was ordered to stand committed until the fine should be paid.

It must, therefore, be held that this court had power to order the defendant to be committed until the fine should be paid.

It is equally clear that the court did not exhaust its power by the order of February 17th. That order adjudged the contempt, and set on foot a proceeding for ascertaining what amount of pecuniary fine should be imposed therefor, directing on what principle and by what means it should be fixed. The subsequent order of March 13th fixed the amount, im-

posed it as a fine for the contempt, to be paid within a fixed time, and ordered commitment till payment. This was proper and regular.

All the points urged in favor of the motion made by the defendant fall within the foregoing considerations, and the motion must be denied. The motion of the plaintiff is granted.